# No. 23-1911

## In the United States Court of Appeals
## For the First Circuit

———————————

**UNITED STATES OF AMERICA**,

Appellee,

-vs-

**JADNEL FLORES-NATER, a/k/a Potro**,

Defendant-Appellant.

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

———————————

**DEFENDANT-APPELLANT'S REPLY**

———————————

Lucas Anderson
*Of Counsel*
Rothman, Schneider,
   Soloway & Stern, LLP
100 Lafayette Street, Ste.501
New York, New York 10013
(212) 571-5500

# Table of Contents

Table of Authorities ................................................................................................iii

Introduction ........................................................................................................1

Argument .............................................................................................................2

   I.   The government's response overlooks relevant facts and authorities.............2

     A.   The government offers no recognition of the manner in which the District Court's criticisms of this Court impacted the resentencing proceeding. .....3

     B.   The government seeks to minimize the degree to which the explanation conjured by the District Court was grounded in arbitrary crime rate comparisons. ...............................................................................................5

     C.   The government discounts the need for a sentencing rationale that does not apply with equal force to every murder chargeable in the District of Puerto Rico..........................................................................................................9

  II.  Instead of responding to relevant issues, the government primarily focuses on straw-man arguments. ...............................................................................10

     A.   The proffered explanation for the 30-year sentence had nothing to do with the explanation Judge Besosa criticized this Court for not "infer[ring]." .10

     B.   The government pretends Flores-Nater is merely challenging his sentence on the grounds that the District Court did not impose the requested sentence...................................................................................................11

     C.   The response brief provides a misleading account of Flores-Nater's argument regarding the extent to which "community considerations" affected his sentence. ...............................................................................12

 III.  The few relevant arguments set forth in the government's response are meritless. .........................................................................................................13

     A.   The government's cited authority supports Flores-Nater's argument with respect to his first point on appeal. ..........................................................13

     B.   The government's response to Flores-Nater's second point on appeal relies on frivolous argumentation. ......................................................................15

   C.   The government cannot identify a plausible sentencing rationale or a defensible result. ........................................................................18

IV.  A reversal is warranted regardless of the applicable standard of review. .....20

   A.   The parties disagree about the applicable standard of review ...................20

   B.   A reversal is warranted under "plain error" review. ................................21

   C.   The government's "waiver" argument is reflective of an unfortunate willingness to grasp at straws. ..................................................................23

V.  The government's second about-face with respect to its advocacy for a sentence above 300-months' imprisonment amounts to a clear material breach of the plea agreement. .......................................................................24

Conclusion ................................................................................................................27

Certificate of Compliance .........................................................................................28

# Table of Authorities

## Cases

Page(s)

*Berger v. United States*,
    295 U.S. 78 (1935) ................................................................. 26

*Gall v. United States*,
    552 U.S. 38 (2007) ................................................................... 6

*Holguin-Hernandez v. United States*,
    589 U.S. 169 (2020) ............................................................... 20

*United States v. Acevedo-Vázquez*,
    977 F.3d 85 (1st Cir. 2020) .................................................... 18

*United States v. Almonte-Nuñez*,
    771 F.3d 84 (1st Cir. 2014) .................................................... 25

*United States v. Aponte-Colón*,
    104 F.4th 402 (1st Cir. 2024) ................................................ 25

*United States v. Benjamin-Hernandez*,
    49 F.4th 580 (1st Cir. 2022) .................................................. 23

*United States v. Brown*,
    31 F.4th 39 (1st Cir. 2022) .................................................... 25

*United States v. Bunchan*,
    580 F.3d 66 (1st Cir. 2009) .................................................... 19

*United States v. Carbajal-Váldez*,
    874 F.3d 778 (1st Cir. 2017) ........................................... 25, 26

*United States v. Clark*,
    55 F.3d 9 (1st Cir. 1995) ....................................................... 25

*United States v. Clogston*,
    662 F.3d 588 (1st Cir. 2011) .................................................. 17

iii

**<u>Table of Authorities, Cont'd</u>**

**Cases**

Page(s)

*United States v. Colón-Cordero,*
91 F.4th 41 (1st Cir. 2024) .................................................................. *passim*

*United States v. Colón-De Jesús,*
85 F.4th 15 (1st Cir. 2023) .................................................................. 23-24

*United States v. Cruz-Vázquez,*
841 F.3d 546 (1st Cir. 2016) ........................................................................ 25

*United States v. Díaz-Rivera,*
957 F.3d 20 (1st Cir. 2020) .......................................................................... 10

*United States v. Flores-González,*
34 F.4th 103 (1st Cir. 2022) ....................................................................... 7-8

*United States v. Flores-González,*
86 F.4th 399 (1st Cir. 2023) .................................................................... 8, 14

*United States v. Flores-Machicote,*
706 F.3d 16 (1st Cir. 2013) ..................................................................... 7, 18

*United States v. González-Castillo,*
562 F.3d 80 (1st Cir. 2009) .......................................................................... 22

*United States v. Graciani-Febus,*
800 F.3d 48 (1st Cir. 2015) .......................................................................... 19

*United States v. Guzman-Fernandez,*
824 F.3d 173 (1st Cir. 2016) ...................................................................... 4-5

*United States v. Jurado-Nazario,*
979 F.3d 60 (1st Cir. 2020) .......................................................................... 26

*United States v. Martin,*
520 F.3d 87 (1st Cir. 2008) .......................................................................... 10

iv

**Cases**

Page(s)

*United States v. McCullock,*
    991 F.3d 313 (1st Cir. 2021) ................................................................ 20, 22

*United States v. Mendes,*
    107 F.4th 22 (1st Cir. 2024) ........................................................................ 14

*United States v. Montero-Montero,*
    817 F.3d 35 (1st Cir. 2016) ..................................................................... 22-23

*United States v. Muñoz-Fontanez,*
    61 F.4th 212 (1st Cir. 2023) .............................................................. 5, 6, 23

*United States v. Navarez-Soto,*
    773 F.3d 282 (1st Cir. 2014) .......................................................................... 7

*United States v. Olano,*
    507 U.S. 725 (1993) .................................................................................... 22

*United States v. Rivera-Berríos,*
    968 F.3d 130 (1st Cir. 2020) .......................................................................... 7

*United States v. Rodriguez-Castro,*
    641 F.3d 1189 (9th Cir. 2011) ..................................................................... 24

*United States v. Rosario-Merced,*
    109 F.4th 77 (1st Cir. 2024) ........................................................... 13-14, 23

*United States v. Santiago-Rivera,*
    744 F.3d 229 (1st Cir. 2014) ....................................................................... 16

*United States v. Teixeria,*
    62 F.4th 10 (1st Cir. 2023) ......................................................................... 21

*United States v. Vásquez-Rosario,*
    45 F.4th 565 (1st Cir. 2022) ....................................................................... 23

## Table of Authorities, Cont'd

### Cases

Page(s)

*United States v. Velez-Soto*,
    804 F.3d 75 (1st Cir. 2015) ................................................................. 9-10

### Statutes, Rules, and Sentencing Guidelines

18 U.S.C. § 924(c)(1)(A)(iii) ...................................................................... 12

Fed. R. Crim. P. 51(b) ................................................................................. 20

Fed. R. Crim. P. 52(b) ................................................................................. 20

Fed. R. App. P. 32(a) .................................................................................. 28

**Introduction**

Litigants with strong answers to the arguments and authorities presented by an opposing party do not seek to avoid or distract from them.

In his opening brief, appellant Jadnel Flores-Nater raises two separate issues stemming from the resentencing proceeding below. First, he argues that the explanation provided by the District Court to justify a 360-month prison sentence—which is three times longer than the advisory U.S. Sentencing Guidelines range and 60 months higher than the 300-month sentence jointly requested by the parties—"was not grounded in an individualized assessment of Flores-Nater or his offense conduct." Br. 17.[1] Second, Flores-Nater argues that the District Court erred by "refus[ing] to acknowledge [his] mitigating arguments relating to his youth at the time of the charged crime[.]" Br. 25.

These arguments were not presented as mere asides or footnoted observations. They are *the* points Flores-Nater has presented to this Court. *See also* Br. 2. The government largely ignores them, choosing instead to focus on undisputed issues and straw-man arguments it evidently wishes Flores-Nater had raised. When the government finally does turn to relevant matters, it casts aside

_____

[1] "Br." refers to the opening brief filed on April 29, 2024; "Resp." refers to the government's August 27, 2024 response brief; "Add." refers to the addendum attached to Flores-Nater's opening brief; "Appx." refers to the appendix; and "Sealed Appx." refers to the sealed appendix.

1

binding authorities and invokes the conclusions of other opinions without offering any recognition of the most relevant facts behind them. Finally, the government invents and repeatedly invokes a "waiver" argument that erroneously presumes Flores-Nater was required, in his opening brief, to anticipate and preemptively respond not only to the government's broader arguments with respect to this appeal (which flatly contradict the contractual agreement through which it induced Flores-Nater to waive important constitutional rights), but also to its more specific claim relating to the applicable standard of review. At the same time, with no apparent recognition of irony, the government itself declines to brief at least two of the four prongs of the "plain error" standard.

## Argument

### I.     The government's response overlooks relevant facts and authorities.

At the outset of its response brief, the government presents a "statement of the issue on appeal" (singular) that misrepresents one of the points raised in Flores-Nater's opening brief and entirely ignores the other. Resp. 3. From there, the response consists mostly of irrelevant facts and legal arguments that are either undisputed or plainly have no bearing on this appeal.

### A. The government offers no recognition of the manner in which the District Court's criticisms of this Court impacted the resentencing proceeding.

In its account of the October 11, 2023 resentencing proceeding, which was held after this Court directed Judge Besosa to "articulate[] a plausible sentencing rationale," Appx. 62, the government notes that "[t]he district court reviewed this Court's decision directing it to explain the aspects of Flores's case that drove the chosen sentence." Resp. 20.[2] *See also* Resp. 7 ("The district court began by explaining that the case had been remanded after this Court held that it failed to offer a plausible rationale."). But the government declines to reveal *any* acknowledgment of the overtly critical and peculiar manner in which the District Court "reviewed" this Court's order. *See* Add. 9-11. *See also* Br. 16 ("[T]he record confirms that th[e] reasoning [presented] had more to do with the District Court's quarrels with this Court than it did with the need for a just and defensible result[.]").

After the parties were given an opportunity to present arguments, the District Court recited the procedural history of this case. First, it noted that Flores-Nater appealed from the initial October 7, 2021 sentencing proceeding on the grounds that his mitigating argument relating to his age at the time of the charged crime had been ignored, but that he ultimately prevailed on appeal "not on the basis of his

---

[2] The appellant prefers to be referred to by his complete surname.

age."[3] Add. 7. Judge Besosa then noted that "[t]he First Circuit Court of Appeals held that this Court 'offered no case-specific rationale to justify a variance of so great a magnitude,'" and that "[a] sentencing court must, when imposing a significant variance, . . . specify which facts of the case motivated its decision[.]" Add. 9 (quoting Appx. 57-58) (emphasis added). However, this recitation was interspersed with two references to an upward variance *from the upwardly variant 25-year sentence recommended by the parties*, rather than the sentence recommended by the U.S. Sentencing Guidelines, *ibid.*, signaling the court's apparent belief that it was required to justify only an upward variance of 60 months (20% higher than the stipulated sentence), rather than 240 months (200% higher than the Guidelines recommendation).

Judge Besosa then complained at length about a perceived lack of deference from this Court. Add. 9-11. Among other things, he noted that "[a] sentence outside the guideline range does not come to the reviewing court with a presumption of unreasonableness," and he argued that "[t]he sentencing court's rationale for an upward variance may be inferred from the record."[4] Add. 9-10. For

---

[3] In *United States v. Colón-Cordero*, 91 F.4th 41, 52 (1st Cir. 2024), this Court explained that a "failure to consider . . . [a] principally highlighted argument" at sentencing "ultimately compels our conclusion that [the] explanation of [an] upwardly variant sentence was . . . inadequate."

[4] *But see United States v. Guzman-Fernandez*, 824 F.3d 173, 178 (1st Cir. 2016) ("[T]he greater the variance, the more compelling the sentencing court's

good measure, Judge Besosa then declared that "a reviewing court ought not to write at length merely to hear its own words resonate," and concluded his initial line of criticism with the claim that "the First Circuit Court of Appeals could, but did not, infer that the circumstances in this case warrant a sentence above the sentence recommended by the parties." Add. 10.

In describing the "ordinary procedure" it claims the District Court followed, Resp. 20, the government declines to mention or offer a response to any of this.

> **B.** **The government seeks to minimize the degree to which the explanation conjured by the District Court was grounded in arbitrary crime rate comparisons.**

The government claims the District Court "thoroughly considered the particular facts in Flores's case," but does not identify any meaningful difference between the factual recitations provided at the first and second sentencing proceedings. Resp. 11. (Indeed, Judge Besosa argued that the facts recited at the initial sentencing amounted to a sufficient explanation for the sentence. Add. 10.) Even after this Court's prior remand order, the District Court provided "another 'mere listing of the facts' [with] no 'emphasis on any particular circumstance.'" *Colón-Cordero*, 91 F.4th at 53 (quoting *Muñoz-Fontanez*, 61 F.4th at 214).

---

justification for the higher sentence must be.") (internal quotation omitted) (quoted by this Court at Appx. 57); *United States v. Muñoz-Fontanez*, 61 F.4th 212, 215 (1st Cir. 2023) ("When imposing a significant variance, a sentencing court must make clear *which* specific facts of the case motivated its decision and *why* those facts led to its decision.") (quoted by this Court at Appx. 61).

The government then asserts that the District Court "considered the high rates of gun violence in Puerto Rico as the backdrop to Flores's crimes." Resp. 11. In fact, when the District Court finally turned to an explanation for the sentence, it first noted that "the parties themselves recognized" that an upward variance was appropriate "when they recommended a sentence of 300 months[.]" Add. 15. *See also* Appx. 61. But with respect to the *magnitude* of the variance it was determined to impose—the only point that has been in dispute since Flores-Nater signed the plea agreement—the District Court's proffered reason for exceeding the significant upward variance recommended by the parties had nothing to do with an "individualized assessment" of this case, *Gall v. United States*, 552 U.S. 38, 50 (2007),[5] and everything to do with crime rates in Puerto Rico *as they compare to other, geographically distant, First Circuit jurisdictions*.[6] Add. 15-22. Whatever message Judge Besosa was attempting to send this Court by invoking those very

---

[5] *See also Colón-Cordero*, 91 F.4th at 51 ("[A] sentencing court must always conduct an 'individualized assessment' of the § 3553(a) factors—which include mitigating characteristics of the offender—based on the facts presented in a particular sentencing case.") (quoting *Gall*, 552 U.S. at 50).

[6] *Compare United States v. Flores-Gonzalez*, 86 F.4th 399, 408 (1st Cir. 2023) (en banc) (Kayatta, Lynch, Gelpí, JJ.) ("[A]n offense can be seen as more serious (and necessitating greater deterrence) when committed in a community experiencing *a greater-than-customary incidence* of related crime.") (emphasis added). None of the facts cited by the District Court indicate that Puerto Rico was then experiencing a "greater-than-customary" incidence of murder crimes. *Ibid.*

specific arbitrary comparisons, it is improper to treat an individual's sentencing proceeding as a forum to advance preexisting jurisprudential disputes.

At the same time, Judge Besosa criticized what he viewed as "shifting standards" from this Court "regarding the propriety of community-based considerations." Add. 16. But insofar as the relevant issues in this case are concerned, the opinions Judge Besosa cited are not contradictory or "shifting." *Ibid.* In his opening brief (pp.19-21), Flores-Nater described how those precedents uniformly allow consideration of "community-based characteristics" but *also* require sentencing decisions to be grounded "in case-specific factors." *United States v. Flores-Machicote*, 706 F.3d 16, 24 (1st Cir. 2013). *See United States v. Rivera-Berríos*, 968 F.3d 130, 136 (1st Cir. 2020) ("[A] court's appraisal of community-based considerations does not relieve its obligation to ground its sentencing determination in individual factors related to the offender and the offense."); *United States v. Navarez-Soto*, 773 F.3d 282, 287 (1st Cir. 2014) ("We have recognized that '[i]t is possible for a sentencing judge to focus too much on the community and too little on the individual.'") (quoting *Flores-Machicote*, 706 F.3d at 24); *United States v. Flores-González*, 34 F.4th 103, 115 (1st Cir. 2022) (panel decision) ("[J]udges act arbitrarily and capriciously by varying upward from the advisory range based solely on the characteristics of the broader community where the defendant's conduct took place."); *United States v. Flores-González*, 86

F.4th 399, 413, 429 (1st Cir. 2023) (evenly split en banc decisions, each describing *Rivera-Berrios* as controlling circuit precedent).

While Judge Besosa noted that an *en banc* ruling in *Flores-Gonzalez* was pending at the time of the resentencing proceeding, he did not indicate why an adjournment would not be ordered until that ruling was issued. Add. 19-20. Nor did he provide prior notice of the fact that he would be selecting a sentence based on a set of facts (2016-2018 crime statistics from multiple jurisdictions) that were never previously mentioned in this case. Add. 20-21. And he certainly did not rely on "the circumstances in this case" to justify the imposed sentence, even though he had just finished criticizing this Court for not "infer[ring]" that explanation from the record. Add. 10. Instead, he compared Puerto Rico's murder rate with corresponding rates in Maine, Rhode Island, Massachusetts, and New Hampshire;[7] repeated the various facts he had already put on record; and then declared—exactly as he had in the first sentencing proceeding—that:

> the sentence recommended by the parties does not reflect the seriousness of the offense, does not promote respect for the law, does not protect the public from additional crimes by Mr. Flores, and does not address the issues of deterrence and punishment.

Add. 20-22. *Compare* Appx. 39.

_____

[7] The District Court invoked statistics generated during the years leading up to Flores-Nater's crime, rather than those relevant to the time of the resentencing proceeding, further undermining any claim that those jurisdictional comparisons were relevant to the need for criminal deterrence. Add. 20-21.

**C.** **The government discounts the need for a sentencing rationale that does not apply with equal force to every murder chargeable in the District of Puerto Rico.**

This Court's prior decision herein emphasized that an upwardly variant sentence must be "moored to individual characteristics of either the offender or the offense of conviction." Appx. 58-59 (cleaned up). Now, the section heading of the first point raised in Flores-Nater's opening brief argues that the novel explanation conjured at resentencing "was not grounded in an individualized assessment of Flores-Nater or his offense conduct." Br. 17. From there, the appellant's brief cites numerous binding authorities and argues that "the reasoning that was ultimately supplied (after a good deal of protest) at resentencing would apply with equal force to *any* defendant charged with a murder offense committed within the District of Puerto Rico." Br. 18-22. *See also* Br. 16 ("[T]he District Court did not identify or analyze any relevant sentencing factor that would set Flores-Nater apart[.]").

The government conspicuously declines to respond to any of this. However, the government does repeatedly cite Judge Besosa's statement that the charged crime "represent[ed] a confluence of crime that regrettably is common in Puerto Rico." Resp. 12, 22 (quoting Add. 21). Of course, that statement applies with just as much force to every other murder occurring in Puerto Rico. *See United States v. Velez-Soto*, 804 F.3d 75, 80 (1st Cir. 2015) ("When a sentence deviates from the Guidelines, '[t]he court's reasons for deviation should typically be rooted either in

the nature and circumstances of the offense or the characteristics of the offender.'" (quoting *United States v. Martin*, 520 F.3d 87, 91 (1st Cir. 2008)); *United States v. Díaz-Rivera*, 957 F.3d 20, 29 (1st Cir. 2020) ("Certainly, assessment of 'community-based considerations' alone does not relieve the sentencing court of its obligation to base its sentencing determination on case- and offense-specific factors."). The government does not and cannot identify an individualized assessment lurking in the District Court's proffered explanation.

## II. Instead of responding to relevant issues, the government primarily focuses on straw-man arguments.

By training its fire on various frivolous arguments it may wish Flores-Nater had raised in his opening brief, the government accentuates its desire to avoid the facts and arguments that are relevant to this appeal.

### A. The proffered explanation for the 30-year sentence had nothing to do with the explanation Judge Besosa criticized this Court for not "infer[ring]."

On the first page of its response, the government represents that "[o]ne of Flores's main complaints [i]s that the district court provided new reasons for its upwardly variant sentence," even though "that was precisely the point of the remand." Resp. 1. *See also* Resp. 14-15, 22-23. In fact, Flores-Nater's opening brief noted that, "even though he had *just* finished criticizing this Court for not 'infer[ring]' that his rejection of the parties' stipulated 300-month sentence was

based on 'the violent acts committed by Mr. Flores,' . . . Judge Besosa proceeded to provide an *entirely different* explanation[.]" Br. 12. *See* pp.5-6, *supra*.

If there were anything in the record to refute this observation, the government would have addressed it head on. Instead, the government avoids the issue and attempts to distract this Court with a patently false claim about Flores-Nater's "main complaints."

> **B.    The government pretends Flores-Nater is merely challenging his sentence on the grounds that the District Court did not impose the requested sentence.**

The government asserts that "Flores also seems to fault the district court in 'rejecting the parties' stipulated sentencing request.'" Resp. 23 (quoting Br. 16). Indeed, the government's "statement of the issue on appeal" pretends that Flores-Nater is asking this Court to decide only whether "the district court erred or abused its discretion in imposing a greater variance than the one the parties recommended[.]" Resp. 3. Then, the government dedicates nearly a full page of its "discussion" to an attack on this straw-man. Resp. 23-24.

Flores-Nater does not anywhere suggest that Judge Besosa's decision to reject the stipulated sentencing request, in itself, amounted to a reversable error. While it is clear the government would prefer to debate that issue, the frivolous argument it chooses to respond to does not appear anywhere in the appellant's brief—unless, of course, one selectively pulls six words from a longer sentence

whose primary point relates to the District Court's proffered *reason* for "rejecting the parties' stipulated sentencing request." Br. 16. *Compare* Resp. 23.

### C. The response brief provides a misleading account of Flores-Nater's argument regarding the extent to which "community considerations" affected his sentence.

Again responding to an argument it has summoned through selective quotation, the government asserts that "Flores's next argument—that his sentence was 'based on nothing more than the geographic location where [his] crime took place'—is plainly refuted by the record." Resp. 24 (quoting Br. 16). If one checks the government's quote to review the omitted portion of the relevant sentence in Flores-Nater's opening brief, one finds that his "summary of the argument" *actually* states: "There is no prior decision of this Court that would permit *such a drastic sentencing enhancement* based on nothing more than the geographic location where a crime took place." Br. 16 (emphasis added). That is a fact the government does not and cannot refute.

Relatedly, as the plea agreement makes clear, it has never been disputed that the 18 U.S.C. § 924(c)(1)(A)(iii) offense to which Flores-Nater pled guilty does not sufficiently account for the seriousness of the charged conduct. *See* Appx. 23. As such, the government's choice to dedicate a significant portion of its brief to that non-issue further underscores its desire to avoid relevant matters. Resp. 9-11.

### III. The few relevant arguments set forth in the government's response are meritless.

#### A. The government's cited authority supports Flores-Nater's argument with respect to his first point on appeal.

Finally addressing an argument Flores-Nater *has* raised, the government observes that a district court's citation of comparative crime rate comparisons "was not a reversible error" in *United States v. Rosario-Merced*, 109 F.4th 77, 84 (1st Cir. 2024). Resp. 25. But in highlighting this conclusion, the government ignores key facts. To wit, the *Rosario-Merced* panel emphasized that the district court there did *not* rely exclusively on comparative crime statistics to explain the imposed sentence. Rather, "[h]e considered them alongside other individualized factors—namely, the additional contraband that [the appellant] possessed." *Ibid.*[8] In fact, the *Rosario-Merced* opinion specifically confirms that "*it would be an error to justify an individual defendant's sentence based only on the need for general deterrence to the exclusion of other factors.*" *Ibid.* (emphasis added).

---

[8] It is also notable that the "two reasons" provided in *Rosario-Merced* "were reiterated in the district court's written Statement of Reasons." 109 F.4th at 82. In *this* case, the Statement of Reasons filed after the initial sentencing proceeding indicates that an upward variance was imposed due to: (1) Flores-Nater's role in the offense; (2) his "prior criminal history"; (3) his personal "history and characteristics" (though no specific aspect of his history or characteristics was identified—not even his age); and (4) the need for retribution, deterrence, and incapacitation. Sealed Appx. 25. Then, after the resentencing proceeding, the District Court filed a "Reason for Amendment" that signifies nothing beyond a checked box for "correction of sentence on remand." Sealed Appx. 27.

Notably, the *Rosario-Merced* panel also observed that:

> Comparing Puerto Rico community characteristics against only other jurisdictions in the First Circuit may not offer the most insightful analysis in determining whether to impose an upward variance. The Sentencing Guidelines are based on nationwide statistics (which include Puerto Rico), so intra-circuit comparisons may not explain why a particular defendant should be punished more or less severely than suggested by the nationwide data factored into the Guidelines.

*Id.* at 85 n.3. While the government concedes that "this Court was right" in this respect, it then cites statistics to underscore the undisputed point that "Puerto Rico exceeds typical homicide rates on the mainland." Resp. 26 n.10. But just like the statistics cited by the District Court below, Add. 20-21, the government's cited statistics do not address a far more relevant point: *The homicide rate in Puerto Rico decreased every year from 2017 to 2020*. Federal Bureau of Investigation, Crime Data Explorer, Trend of Homicide, *available at* https://cde.ucr.cjis.gov/ LATEST/webapp/#/pages/explorer/crime/crime-trend (last accessed Sept. 16, 2024). As such, at the time of Flores-Nater's 2018 offense, the "location where the offense occurred" was *not* "experiencing a greater-than-customary incidence of related crime." *United States v. Mendes*, 107 F.4th 22, 31 (1st Cir. 2024) (quoting *Flores-González*, 86 F.4th at 408).

**B.    The government's response to Flores-Nater's second point on appeal relies on frivolous argumentation.**

Before his initial sentencing proceeding, Flores-Nater filed a memorandum that included an extensive and detailed mitigation argument, supported by numerous Supreme Court precedents, relating to the fact that he was barely 18 years old at the time of the charged crime. Sealed Appx. 16-18. *See also* Br. 26-27. Then, in his initial appeal to this Court, Flores-Nater observed that the District Court's only mention of *anything* relating to his age during the first sentencing proceeding consisted of the observation that "Mr. Flores is 21 years old."[9] Case 21-1856, Dkt. No. 117881734, at 20-21. At resentencing, Flores-Nater attempted to remind the District Court that "in our sentencing submission . . . , we made an analysis of the relevant 3553 factors regarding young offenders[.]" Add. 3. Unfortunately, none of this had any effect on the District Court's continuing refusal to acknowledge, let alone consider, the presented mitigating argument.

Although it is "nose-to-face plain from the record" that Judge Besosa did not consider Flores-Nater's argument, *Colón-Cordero*, 91 F.4th at 55, the government argues otherwise, citing the fact that it: "reviewed Flores's age as it detailed his

---

[9] As noted above, Judge Besosa later complained that this Court ordered a resentencing, but "not on the basis of [Flores-Nater's] age." Add. 7. However, this Court has held that a sentencing court's failure to "consider or address" a significant presented mitigating argument is "quite related[]" to the failure to "provide an adequate explanation for [an] upward variance." *Colón-Cordero*, 91 F.4th at 52. *See* n.3, *supra*.

personal characteristics and history"; "expressed that it had reviewed the sentencing considerations in § 3553(a)"; and "stated that it considered the presentence report, Flores's sentencing memorandum, and the arguments presented by Flores's counsel—all which reflected his age." Resp. 15, 26. In sum, just as it did in *Colón-Cordero*, 91 F.4th at 52, the government "submits that, because the district court was obviously very aware of" the presented mitigating argument, "its decision simply reflects that it considered and rejected" that argument.

But without ever acknowledging or addressing the relevant portions of *Colón-Cordero*—which is cited throughout Flores-Nater's opening brief—the government summarily deems it to be "inapplicable." Resp. 26. At the same time, the government invokes *United States v. Santiago-Rivera*, 744 F.3d 229, 233 (1st Cir. 2014), where the district court "addressed the defendant's potentially mitigating personal background and traits, . . . explained that he had considered the defendant's arguments concerning these matters as well as the available documentation," and "engaged in a protracted colloquy anent the defendant's claim of diminished mental capacity." Insofar as consideration of a presented mitigating argument is concerned, it is difficult to think of a case that would be more factually distinguishable.

The government's initial line of attack—that Judge Besosa "reviewed Flores's age" in describing his personal history and characteristics, and that he later

mentioned the fact that the victim was a year older than Flores-Nater—amounts to frivolous argumentation. Resp. 26-27. Looking to the relevant portions of the record, one sees that the District Court merely said: "Mr. Flores is 23 years old," and "WGE was 20 years old, just one year older than Mr. Flores at the time of the offense."[10] Add. 9, 12. Whether the government in all candor believes that amounts to consideration of Flores-Nater's detailed mitigating argument,[11] the credibility of its remaining assertions should be viewed with that claim in mind.

On the other hand, the District Court's vague, boilerplate assurance that it had considered the § 3553(a) factors is "entitled to some weight," *United States v. Clogston*, 662 F.3d 588, 592 (1st Cir. 2011) (internal quotation omitted), and this Court "will take that into consideration," *Colón-Cordero*, 91 F.4th at 51. But while the government also "points . . . to the district court telling the parties it had read and considered [Flores-Nater's] sentencing memorandum, where his [mitigating argument] was highlighted in detail," that is plainly not enough. *Id.* at 52. "[O]n this record, it is simply a bridge too far . . . to say that the district court

---

[10] Even a cursory review of Flores-Nater's briefed argument reveals that he was only 18 years and two months old at the time of the offense, which is not "one year" younger than 20. *See* Sealed Appx. 16.

[11] Like the *Colón-Cordero* appellant, Flores-Nater "isn't complaining about how a bunch of important mitigating factors were discarded or weighed wrong; he isn't arguing that some of his arguments were given short shrift or misunderstood. His position is that *the* mitigating individual characteristic and *the* argument about it were completely ignored." 91 F.4th at 55.

meaningfully considered, let alone adequately explained, how [Flores-Nater's] specific individual circumstances impacted the final sentencing decision." *Id.* at 56.

## C. The government cannot identify a plausible sentencing rationale or a defensible result.

Flores-Nater's opening brief notes that appellate review for "substantive reasonableness" raises the question of whether "a plausible sentencing rationale and a defensible result" can be identified in the record. Br. 23. *See also United States v. Acevedo-Vázquez*, 977 F.3d 85, 89 (1st Cir. 2020) (describing the "linchpin" of substantive reasonableness). Then, arguing that Judge Besosa's resort to highly selective crime rate comparisons to explain a 20-year upward variance was "implausible and illogical," Flores-Nater asks: "Why, if this sentence is affirmed, couldn't a defendant in a federal murder case charged elsewhere in the First Circuit seek (and obtain) a significant *downward* variance based on the fact that his crime was not committed in Puerto Rico?" Br. 23.[12] In a footnote near the end of its response brief, the government makes Flores-Nater's point for him by quoting *Flores-Machicote*, 706 F.3d at 24, and arguing that, in such a case, "the district court would err by 'focus[ing] too much on the community and too little on

---

[12] Alternatively, if crime rates increased in some part(s) of New England, would defendants in Puerto Rico receive lighter sentences to account for that fact? If arbitrary jurisdictional comparisons can be depended on to "highlight[] the need for general and specific deterrence," then the answer must be yes. Resp. 12 (quoting Add. 22).

the individual.'" Resp. 25 n.9. But the government does not present any argument to challenge the relevance of this hypothetical, which is merely a logical extension of the reasoning Judge Besosa provided to justify a 20-year upward variance.

The government offers no response at all to Flores-Nater's remaining points with respect to the implausibility and indefensibility of the proffered sentencing rationale. Br. 24-25. Instead, the government argues that "the 35-year [sic] sentence" is defensible merely because it "was within the broad universe of reasonable sentences." Resp. 31. In support, the government quotes *United States v. Bunchan*'s conclusion that "the district court did not abuse its discretion in imposing a thirty-five-year term of imprisonment," but noticeably fails to mention anything about the sentencing proceeding in *Bunchan* that might be comparable to this case. *Ibid.* (quoting 580 F.3d 66, 72 (1st Cir. 2009)). Among other things, the government does not mention that the sentence reviewed in *Bunchan* was a *downward* variance from the calculated Guidelines range. 580 F.3d at 72. *See also United States v. Graciani-Febus*, 800 F.3d 48, 53 (1st Cir. 2015) (cited at Resp. 31) (involving a "within-the-Guidelines sentence.").

For good reason, the government does not and cannot identify authority to indicate that a 35-year sentence is, by definition, substantively reasonable regardless of how that sentence was chosen or explained.

## IV.    A reversal is warranted regardless of the applicable standard of review.

### A.    The parties disagree about the applicable standard of review

Flores-Nater contends that the "multi-dimensional" abuse-of-discretion

applies to both of his points on appeal. *United States v. McCullock*, 991 F.3d 313,

317 (1st Cir. 2021). *See* Br. 17. Under Fed. R. Crim. P. 51(b), "[a] party may

preserve a claim of error by informing the court—when the court ruling or order is

made or sought—of the action the party wishes the court to take." Moreover, in

*Holguin-Hernandez v. United States*, 589 U.S. 169, 174 (2020), the Supreme Court

confirmed that criminal defendants are not "required to refer to the

'reasonableness' of a sentence to preserve such claims for appeal." Rather, an issue

is preserved when it is "brought to the [district] court's attention." *Ibid.* (citing Fed.

R. Crim. P. 52(b)). *See also Colón-Cordero*, 91 F.4th at 50 (confirming that,

"basically, putting the district court on notice of the error" is this Court's

"preservation policy.").

In this case, after the parties were given an opportunity to make arguments

and lodge objections, the District Court invoked a set of facts (relating to various

jurisdictions' crime rates over a three-year period) that were not in the record, and

it then used those facts to advance an argument that was not presented by either of

the parties or mentioned at any earlier point in the proceedings. Then, the court

"proceeded immediately" to impose sentence. *United States v. Teixeria*, 62 F.4th 10, 18 (1st Cir. 2023). Add. 22-23. "Taking a practical view of the circumstances," because Flores-Nater "had no reason to anticipate that such a[n explanation] would be forthcoming," *ibid.*, the mere fact that Judge Besosa said "anything else" *after* he imposed the sentence and described its various components does not mean Flores-Nater had a reasonable opportunity to respond and lodge a sufficiently detailed objection.

As for its continuing refusal to even acknowledge (let alone consider and account for) Flores-Nater's primary mitigating argument, the District Court was as much "on notice" of that argument as it possibly could have been. *Colón-Cordero*, 91 F.4th at 50. Indeed, at the outset of his own comments at the resentencing proceeding, Judge Besosa made a point of noting that Flores-Nater had argued, in his prior appeal, that his "youth at the time of his offense" was not previously considered. Add. 7. Prior to that, as the government notes, defense counsel "began by asking the court to take into consideration Flores's age at the time of the events." Resp. 6.

### B. A reversal is warranted under "plain error" review.

Even if the "plain error" standard applies, the District Court's errors clear that bar. The undisputable facts in the record and the binding authorities cited in Flores-Nater's opening brief make it abundantly clear that the District Court

committed "clear" or "obvious" errors that "affect[ed] substantial rights" and "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993).

The government's response notes that plain error review requires "[t]he appellant [to] establish an error under 'binding authority.'" Resp. 17 (quoting *McCullock*, 991 F.3d at 322). (The government then states that "[a] failure to address the four prongs of plain error amounts to waiver of the issue," Resp. 17, which raises the obvious question of why the government itself did not brief at least two of those four prongs.) Of course, all of the authorities presented in Flores-Nater's opening brief *are* binding, a fact that is unaffected by the government's choice to ignore them or cast them aside as "inapplicable." Resp. 26.[13]

As for Flores-Nater's substantial rights, it is equally obvious that the District Court's errors have now twice affected the sentence imposed. At the very least, there is "a reasonable probability," *United States v. González-Castillo*, 562 F.3d 80, 83 (1st Cir. 2009), that the outcome was affected by Judge Besosa's persistent refusal to acknowledge Flores-Nater's principal mitigating argument (to say nothing of the other mitigating arguments), *and* by his inability or unwillingness to provide a case-specific explanation for a 30-year prison sentence. "In such

---

[13] As the government's own case citation makes clear, "no one questions that a district court is required to provide a reasoned and case-specific explanation for the sentence it imposes." *McCullock*, 991 F.3d at 318 (cleaned up).

circumstances," regardless of whether one believes that a judge less inclined to use sentencing proceedings as a forum to send messages to this Court would have imposed a lighter sentence, "it would cast a shadow over the courts' reputation for fairness" to allow these errors to stand. *United States v. Montero-Montero*, 817 F.3d 35, 38 (1st Cir. 2016). *See also Muñoz-Fontanez*, 61 F.4th at 215 (noting that the "failure to explain a sentence casts a shadow over the court's reputation for fairness.") (cleaned up).

### C. The government's "waiver" argument is reflective of an unfortunate willingness to grasp at straws.

The government's *primary* argument is that Flores-Nater has "waiv[ed] most or all of his appeal" because he did not "brief the prongs of plain error" in his opening brief. Resp. 14. *See also* Resp. 17-20, 30, 33. In support of this entirely novel argument, the government cites *United States v. Vásquez-Rosario*, No. 20-1087, 45 F.4th 565 (1st Cir. 2022), *Rosario-Merced*, No. 22-1642, 109 F.4th at 82, and *United States v. Benjamin-Hernandez*, No. 20-1236, 49 F.4th 580, 589 (1st Cir. 2022). In each of those cases, the appellants did not file reply briefs after the government invoked the "plain error" standard of review. Accordingly, *none* of them support the ludicrous proposition that an appellant is required to correctly guess what an appellee will argue in its response brief and preemptively brief responses to each prong of that argument. *See also United States v. Colón-De Jesús*, 85 F.4th 15, 25 n.14 (1st Cir. 2023) (noting that "even after the government

asserted in its opening brief that plain error review applied . . . , [the appellant] made no effort in his reply brief to argue plain error."). *Compare* pp.21-23, *supra.* This is particularly true where the appellee itself "fails to address" at least half of the prongs relating to the specific argument it believes the appellant should have anticipatorily rebutted. Resp. 17.

<h3>V.    The government's second about-face with respect to its advocacy for a sentence above 300-months' imprisonment constitutes a clear material breach of the plea agreement.</h3>

The plea agreement states that "any recommendation by either party for a term of imprisonment below or above the stipulated sentence recommendation will constitute a material breach[.]"[14]Appx. 23-24. It is difficult to think of language that would be more clear or absolute. Nothing in this clause or any other part of the plea agreement suggests that the parties' mutual promise is temporally, geographically, or jurisdictionally limited; there is nothing to indicate that one of the parties is bound to its obligations only in certain proceedings. *Compare United States v. Rodriguez-Castro*, 641 F.3d 1189, 1192 (9th Cir. 2011) (interpreting a plea agreement that specifically entitled the government "to support on appeal the sentence actually imposed.").

The government drafted this agreement. Flores-Nater waived extremely important constitutional rights when he signed it, and he has upheld his end of the

_____

[14] This fact was not raised in connection with Flores-Nater's prior appeal.

bargain. As such, he is "entitled to the benefit of th[at] bargain and the good faith of the prosecutor." *United States v. Brown*, 31 F.4th 39, 50 (1st Cir. 2022) (internal quotation omitted). But the government is not even willing to entertain "technical compliance" with its explicit promise. *United States v. Aponte-Colón*, 104 F.4th 402, 410 (1st Cir. 2024). As such, it has now *twice* put itself in the position of changing its posture with respect to what constitutes a reasonable sentence in this case.

More should be expected of the government. Ordinarily, prosecuting offices are held to "meticulous standards of promise and performance," *United States v. Clark*, 55 F.3d 9, 12 (1st Cir. 1995), and this Court typically "prohibit[s] not only explicit repudiation of the government's assurances but also end-runs around those assurances," *United States v. Cruz-Vázquez*, 841 F.3d 546, 548 (1st Cir. 2016). *See also United States v. Almonte-Nuñez*, 771 F.3d 84, 91 (1st Cir. 2014) (confirming that the government is ordinarily not permitted to pay "lip service" and "reaffirm[] a promise to the defendant on one side of [its] mouth" while "subvert[ing] it out of the other side.").

Flores-Nater respectfully contends that the Department of Justice is not "tasked, in effect" or in actuality, "with defending the district court's judgment when a criminal defendant appeals." *United States v. Carbajal-Váldez*, 874 F.3d 778, 786 (1st Cir. 2017). Even in cases where there is not a plea agreement with a

relevant clause in effect, prosecutors are charged with seeking justice. While some U.S. Attorney's Offices may be more inclined than others to reflexively oppose everything criminal defendants argue at the appellate level, the government is not properly considered to be a district court's advocate. Indeed, *Carbajal-Váldez* itself cited to *Berger v. United States*, where the Supreme Court confirmed that "[t]he United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case but that justice shall be done." 295 U.S. 78, 88 (1935).

If plea agreements are "interpreted according to normal contract principles," *United States v. Jurado-Nazario*, 979 F.3d 60, 63 (1st Cir. 2020), then the party who drafted the agreement here should either identify a provision that entitles it to abandon its promises at will or abide by those promises. If nothing else, the government's interest in its own credibility should prevent it from repeatedly changing its position about important issues in the same case.

## **Conclusion**

The case should be remanded for resentencing.


Dated:     September 17, 2024          /s/_____
           New York, New York          Lucas Anderson
                                       *Of Counsel*
                                       Rothman, Schneider,
                                            Soloway & Stern, LLP
                                       100 Lafayette Street, Ste. 501
                                       New York, New York 10013
                                       (212) 571-5500

## Certificate of Compliance

In compliance with Rule 32(a) of the Federal Rules of Appellate Procedure, this brief contains 6,274 words, including footnotes and headings, and is printed in proportionally spaced 14-point Times New Roman typeface.

Dated:     September 17, 2024     /s/_____
            New York, New York      Lucas Anderson
                                          *Of Counsel*
                                          Rothman, Schneider,
                                              Soloway & Stern, LLP
                                          100 Lafayette Street, Ste. 501
                                          New York, New York 10013
                                          (212) 571-5500